# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| _____ ) | | |
| NEW ENGLAND FISH COMPANY, LLC ) | | |
| and ) | | |
| F/V OCEAN SPRAY PARTNERSHIP, ) | | |
| ) | | |
| Plaintiffs ) | Case No. 1:17-cv-00106-JAW | |
| ) | | |
| v. ) | | |
| ) | | |
| NEW ENGLAND MOTOR FREIGHT, INC., ) | | |
| ) | | |
| Defendant ) | | |
| _____) | | |

## FIRST AMENDED COMPLAINT

NOW COME Plaintiffs New England Fish Company, LLC, and F/V Ocean Spray Partnership, by and through their undersigned counsel, and complain against Defendant New England Motor Freight, Inc. as follows:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff New England Fish Company, LLC (hereinafter "NEFCO") is a Maine limited liability company with a principal place of business in Portland, Maine.

2.      Plaintiff F/V Ocean Spray Partnership (hereinafter "OSP") is an Alaskan general partnership formed under the laws of the State of Alaska, which maintains a principal place of business in Portland, Maine.

3.      New England Motor Freight, Inc. (hereinafter "Defendant" or "NEMF") is a New Jersey corporation with its principal place of business in Elizabeth, New Jersey.

1

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1445 and 1446(b) because Plaintiffs allege a claim arising under an Act of Congress regulating commerce involving damages in excess of $10,000, exclusive of interest and costs, and also because plaintiffs originally filed this action in a court of the State of Maine which action is subject to removal to this Court.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1441(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District or a substantial part of property that is the subject of the action is situated in this District, and also because plaintiffs originally filed this action in a court of the State of Maine which action is subject to removal to this Court.

## FACTS

6.      On or about September 21, 2016, Plaintiffs purchased a brand new, tailor-made 38' x 32' Long Wing Mackerel/Herring Mid Water Trawl Net (hereinafter "Plaintiffs' Fishing Net") from Swan Net USA, L.L.C., a Washington limited liability company based in Seattle (hereinafter "Swan Net USA").   The net was purchased for use on a commercial fishing vessel owned by Plaintiff OSP and operated by Plaintiff NEFCO.  Plaintiffs paid Swan Net USA the sum of $45,000.00 for the net, and $1,776.77 for the cost of shipping from Seattle to Maine.  A true and correct copy of the September 21, 2016 invoice from Swan Net USA is attached hereto as Exhibit A.

7.      Swan Net USA contracted with Oak Harbor Freight Lines (hereinafter "Oak Harbor") to ship the Plaintiffs' Fishing Net from Swan Net USA in Seattle, Washington to Plaintiffs' principal place of business at 446 Commercial Street in Portland, Maine (hereinafter sometimes referred to as the "Final Shipping Destination").

A true and correct copy of the Bill of Lading issued by Oak Harbor for this shipment is attached hereto as Exhibit B.  Plaintiff NEFCO is listed as a consignee on the Bill of Lading.

8.      Oak Harbor accepted the Plaintiffs' Fishing Net for transportation and delivery on or about September 21, 2016.  On or about September 26, 2016, Oak Harbor transferred Plaintiffs' Fishing Net free and clear to the custody of NEMF for transportation and delivery to the Final Shipping Destination.  On or about September 26, 2016, NEMF accepted custody of Plaintiff's Fishing Net from Oak Harbor, for transportation and delivery to the Final Shipping Destination, without any exceptions noted by NEMF as to any damage to the net.  Attached as Exhibit C hereto is a true and correct copy of an exception report generated by NEMF, which was provided by NEMF to Oak Harbor on or about September 28, 2016.

9.      Upon information and belief, NEMF did not issue a bill of lading when it received custody of the Plaintiffs' Fishing Net from Oak Harbor for transportation and delivery to the Final Shipping Destination, or at any time thereafter.

10.      At the time NEMF accepted custody of Plaintiffs' Fishing Net for transportation and delivery on or about September 21, 2016, it was in good condition, to wit, the brand-new condition it was in when it was first accepted for shipment by Oak Harbor on or about September 21, 2016.

11.       After accepting custody on or about September 26, 2016, NEMF transported Plaintiffs' Fishing Net to the Final Shipping Destination, with delivery occurring on September 29, 2016.  Upon arrival, the Plaintiffs' Fishing Net lay on its side in the NEMF truck, strewn with crushed and broken pieces of what were once the

3

wooden handling pallets.  Mechanical abrasions were noticeable all over the netting,

which was also contaminated with hydraulic oil throughout.  Attached as Exhibit D

hereto is a copy of the delivery receipt issued by NEMF to Plaintiffs upon delivery.

12.     At time of delivery, the NEMF driver (Mr. Pike) admitted that the cargo

was dropped during handling by NEMF employees at an NEMF terminal/distribution

center before it was loaded onto the NEMF truck that transported the cargo to Portland.

According to the NEMF driver, the Plaintiffs' Fishing Net was being moved at the

NEMF terminal/distribution center by NEMF employees using a hydraulic lift that was

either defective or not large enough for the job.  The hydraulic hose apparently ruptured

causing NEMF employees to drop the net which immediately became covered with

hydraulic oil.  According to NEMF driver Pike, the NEMF employees then proceeded to

drag NEFCO's Fishing Net across the floor of the NEMF terminal/distribution center to

the truck where it was then loaded for delivery to the Final Destination.

13.     On the very same day it took delivery of its damaged fishing net, NEFCO

had the net surveyed by a professional marine surveyor, Quest Marine Services, which

documented the damage to the net and concluded that the cost of repairing the damage to

Plaintiffs' Fishing Net could reasonably approach the $45,000 price paid by Plaintiffs for

the net, without actually restoring the net to the brand-new condition it was in when it was

shipped.  Attached as Exhibit E hereto is a true and correct copy of the September 29, 2016

Survey Report by Quest Marine Services, which includes photographs of the damaged

Plaintiffs' Fishing Net.

14.     In early October, 2016, NEFCO hired McIntire Services, a Portland-based

maritime repair company, to estimate the total cost of repairing the damage to the

Plaintiffs' Fishing Net and to attempt to repair the net.  Based on its inspection of the net, its initial efforts to repair the net, and the survey report prepared by Quest Marine Services, McIntire Services concluded that the cost of repair would be approximately $35,000 without restoring the net to its pre-damaged condition.  McIntire Services therefore recommended the net be replaced with a new one.  Attached as Exhibit F hereto is a true and correct copy of the repair estimate from McIntire Services.

15.     Plaintiffs paid McIntire Services $8,800.00 for its efforts to assess damage and repair the Plaintiffs' Fishing Net before work was stopped after it was determined that the repair would cost approximately $35,000 without restoring the net to its pre-damaged condition.

16.     Through its undersigned counsel, NEFCO sent a Notice of Claim to NEMF on October 9, 2010 and demanded full reimbursement for the cost of the net – $45,000 – that had been determined to be a total loss.  NEMF refused to accept responsibility for the damage to the Plaintiffs' Fishing Net or compensate NEFCO for that damage, despite many follow up communications and efforts by its undersigned counsel.

17.     In mid-December, 2016, Plaintiffs received an identical replacement net from Swan Net USA.  Plaintiffs paid Swan Net USA another $45,000.00 for the replacement net, and an additional $1,800.00 for the cost of shipping.  A true and correct copy of the invoice for the replacement net is attached hereto as Exhibit G.

## COUNT I
### (Claim for Damages Under 49 U.S.C. § 14706)

18.     Plaintiffs repeat and reallege paragraphs 1-17 of its Complaint as if fully set forth herein.

19.     At all times pertinent to this action, Defendant NEMF was a carrier providing transportation or service within the meaning of 49 U.S.C. § 14706(a)(1).

20.     At all times pertinent to this action, Defendant NEMF was the delivering carrier of Plaintiffs' Fishing Net within the meaning of 49 U.S.C. 14706(a) and (d).

21.      At the time NEMF accepted custody of Plaintiffs' Fishing Net from Oak Harbor for transportation and delivery on or about September 21, 2016, it was in good condition, to wit, the brand-new condition it was in when it was first accepted for shipment by Oak Harbor on or about September 21, 2016.

22.     After accepting custody of Plaintiffs' Fishing Net, and before NEMF delivered Plaintiffs' Fishing Net to the Final Shipping Destination, Plaintiffs' Fishing Net was damaged.  Said damage constituted a total loss to Plaintiffs' Fishing Net, which required replacement.

23.     Defendant NEMF, through the actions or omissions of its employees and/or agents, caused the loss and damage to Plaintiffs' Fishing Net.

24.     Plaintiffs paid McIntire Services $8,800.00 for its efforts to assess damage and attempt to repair the Plaintiffs' Fishing Net before work was stopped after it was determined that the repair would cost approximately $35,000.00 without restoring the net to its pre-damaged condition.  The damage to the Plaintiffs' Fishing Net was a total loss.

25.     Plaintiffs purchased a replacement fishing net from the same manufacturer, Swan Net USA, at the same cost as the net that was damaged, that is, for the sum of $45,000.00, and paid an additional $1,800.00 in shipping costs.

26.     At the time of the loss, Plaintiffs were the owners of the damaged fishing net, and Plaintiff NEFCO was named as consignee on the Bill of Lading issued by Oak

Harbor to the shipper, Swan Net USA.  As a result, Plaintiffs', or either one of them, are persons entitled to recover under the Bill of Lading within the meaning of 49 U.S.C. § 14706(a)(1).

27.     Plaintiffs have suffered direct and consequential harm as a result of the above-referenced actions and omissions, including but not limited to the cost of replacing their damaged net, the cost of shipping the replacement net, and the cost of assessing damage to – and unsuccessfully attempting to repair – the damaged net, amounting to total damages of not less than $55,600.00.

28.     Pursuant to 49 U.S.C. § 14706, Defendant is liable to Plaintiffs for the above-described damages.

WHEREFORE, Plaintiff New England Fish Company, LLC respectfully requests that this Court:

A.     Order that Defendant pay to Plaintiffs such compensatory damages as are appropriate, plus interest and costs; and

B.     Grant Plaintiff such other relief as the Court deems just and proper.

NEW ENGLAND FISH COMPANY, LLC
and
F/V OCEAN SPRAY PARTNERSHIP

By their counsel,

Dated:  April 5, 2017          /s/ John H. Branson

BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
Tel. (207) 780-8611
Fax: (207) 221-2203
Email:  jbranson@bransonlawoffice.com

## CERTIFICATE OF SERVICE

I, John H. Branson, certify that on April 5, 2017, I electronically filed the within FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all parties, including those listed below, by operation of the Court's CM/ECF system.  Parties may access this filing through the CM/ECF system.

Daniel Sonneborn, Esq.
Preti Flaherty Beliveau & Pachios LLP
60 State Street, Suite 1100
Boston, MA 02109
dsonneborn@preti.com

*Counsel for Defendant*

Dated:  April 5, 2017                          /s/ John H. Branson

John H. Branson, Esq.
BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
Phone:  (207) 780-8611
Fax: (207) 221-2203
E-mail:  jbranson@bransonlawoffice.com